UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SARAH JOY HARRY,

           Plaintiff,        Civil Action No. 19-13245
                                       Honorable Gershwin A. Drain
v.                                     Magistrate Judge David R. Grand

COMMISSIONER OF
SOCIAL SECURITY,

           Defendant.
_____/

## REPORT AND RECOMMENDATION ON
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 15, 16)

Plaintiff Sarah Joy Harry ("Harry") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions (ECF Nos. 15, 16), which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

**I.    RECOMMENDATION**

For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Harry is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, Harry's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN**

**PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

## II.  REPORT

### A.  Background

Harry was 30 years old at the time of her alleged onset date of May 22, 2015,[1] and at 5' tall weighed approximately 180 pounds during the relevant time period. (Tr. 198, 213). She completed high school and college. (Tr. 214). Previously, she worked as a customer service representative, nanny, and in music instrument sales, but she lost her job in August of 2014 for missing too much work due to her medical conditions. (Tr. 37-44, 201, 213). She now alleges disability primarily as a result of multiple sclerosis, as well as optical neuritis, and depression. (Tr. 44-48, 213).

After Harry's applications for DIB and SSI were denied at the initial level (Tr. 103-18), she timely requested an administrative hearing, which was held on August 15, 2018, before ALJ Robert Tjapkes (Tr. 30-66). Harry, who was represented by attorney Matthew Taylor, testified at the hearing, as did vocational expert ("VE") Guy Hostetler. (*Id.*). On October 24, 2018, the ALJ issued a written decision finding that Harry is not disabled under the Act. (Tr. 12-24). On October 8, 2019, the Appeals Council denied review. (Tr. 1-5). Harry timely filed for judicial review of the final decision on November 4, 2019. (ECF No. 1).

---

[1] Originally, Harry alleged a disability onset date of August 11, 2014. (Tr. 198). Subsequently, however, she amended her alleged onset date to May 22, 2015. (Tr. 278).

The Court has thoroughly reviewed the transcript in this matter, including Harry's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### B. The ALJ's Application of the Disability Framework Analysis

Under the Act, DIB and SSI are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.

3

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following this five-step sequential analysis, the ALJ found that Harry is not disabled under the Act. At Step One, the ALJ found that she has not engaged in substantial gainful activity since August 11, 2014 (the original alleged onset date). (Tr. 14). At Step Two, the ALJ found that Harry has the severe impairments of multiple sclerosis ("MS") and depression. (*Id.*). At Step Three, the ALJ found that her impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 14-15).

The ALJ then assessed Harry's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: cannot climb ladders, ropes, or scaffolds; cannot work around hazards, such as unprotected heights or unguarded moving machinery; can have no exposure to extremes of heat or humidity; must be able to use a cane for ambulation; no fast-paced or production rate work; capable of only simple, routine tasks; requires indoor work, with access to a bathroom; and

4

there can be no requirement for far visual acuity. (Tr. 16).

At Step Four, the ALJ found that Harry is not able to perform any of her past relevant work. (Tr. 22). At Step Five, the ALJ determined, based in part on testimony provided by the VE in response to hypothetical questions, that Harry is capable of performing the jobs of food and beverage order clerk (176,850 jobs nationally) and surveillance system monitor (18,770 jobs). (Tr. 23). As a result, the ALJ concluded that Harry is not disabled under the Act. (*Id.*).

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass*, 499 F.3d at

512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

    **D.**    **Analysis**

In her motion, Harry argues that the RFC formulated by the ALJ is not supported by substantial evidence, primarily because the ALJ erred in weighing the opinion of her treating medical provider, Nicole Cook, PA-C. (ECF No. 15, PageID.638-46). For the reasons set forth below, the Court agrees and finds that remand is warranted.

    *1.*    *The Relevant Medical Evidence*

On May 27, 2015, while living in Indiana, Harry presented to Nicolette Alexander, a nurse practitioner, to establish care. (Tr. 320-27). She reported suffering from MS since 2014, indicating that she had been advised at that time to start medication, but she had "not yet decided whether she wants to or not." (Tr. 320). She reported ongoing parathesia,

6

abnormal temperature sensations in her mouth, fatigue, depression, and worsening vision problems. (*Id.*). She was started on amantadine and Copaxone injections. (Tr. 322).

On July 9, 2015, MRIs of Harry's brain and cervical spine were performed. The cervical spine MRI revealed multiple T2 bright lesions consistent with MS plaques in the cervical spinal cord, as well as the medulla and pons; additionally, two active enhancing plaques were noted, one in the medulla and one in the upper cervical spinal cord. (Tr. 333). The brain MRI performed the same day revealed multiple T2 bright lesions in the brain consistent with MS and two enhancing lesions in the left frontal lobe consistent with active plaques. (Tr. 337-38). At a follow-up visit to NP Alexander on July 10, 2015, Harry reported stumbling and falling on two recent occasions when fatigued, and she was prescribed a cane and referred to physical therapy for gait training to ensure proper usage of the cane. (Tr. 309-12).

On October 9, 2015, Harry was seen by neurologist Sanjeev Maniar, M.D., who noted worsening MS symptoms, including more blurred vision in the left eye, worsening weakness on the left side, urinary urgency, fatigue, depression, trouble finding words, and speech problems. (Tr. 373). Dr. Maniar further noted that recent MRIs of Harry's brain and cervical spine showed "active demyelination." (*Id.*).

Due to ongoing problems with depression, Harry was referred to Michael Frampton, M.D. for a psychiatric evaluation, which took place on October 19, 2015. On mental status examination, Harry had anxiety and a constricted affect, and she was diagnosed with severe recurrent major depressive disorder. (Tr. 348-49). Her medication was changed from Prozac to Pristiq, and Trazodone was continued. (Tr. 349).

7

Harry returned to see Dr. Maniar on December 31, 2015, reporting that she felt like she was getting worse and that the Copaxone injections were not helping. (Tr. 370). She further complained of poor balance, incontinence, and weakness on the left side. (*Id.*). Dr. Maniar noted that left leg strength testing was reduced, gait and station were impaired with a left-sided hemiparetic gait, and deep tendon reflexes were abnormal. (Tr. 371). Dr. Maniar diagnosed relapsing and remitting MS with new exacerbation. (Tr. 372).

Subsequently, Harry moved from Indiana to Michigan, and on August 18, 2016, she saw neurologist Faith Fuentes, M.D. (Tr. 388-90). Dr. Fuentes confirmed Harry's problems with blurred vision, left-sided weakness, urinary urgency and frequency with incontinence, and problems with memory and balance. (Tr. 388). Dr. Fuentes ordered MRIs of Harry's brain and spinal cord (Tr. 389), which were performed on September 3, 2016, and showed:

- Brain MRI: When compared to a previous study (performed in October 2014), there was a significant progression in the degree of involvement of cervical white matter with areas of demyelination of MS. Fairly extensive and somewhat ill-defined involvement of the brain stem was noted, as were two enhancing lesions. (Tr. 401-03).
- Cervical spine MRI: When compared to a previous study (performed in October 2014), there was "[e]xtensive and progressive" involvement of the spinal cord, with areas of demyelination of MS. (Tr. 404-05). There was also a small disc herniation noted at the C3-C4 level abutting the ventral aspect of the cervical spinal cord. (Tr. 405).
- Thoracic spine MRI: There was an area of demyelination involving the ventral and mid-thoracic spinal cord at the T6 level. (Tr. 426).

Harry returned to see Dr. Fuentes on September 21, 2016 to discuss the MRI results, at which time she was advised that the imaging showed progressions of the disease and the

8

lesions since prior testing performed in 2014. (Tr. 419). At what appears to be Harry's last visit to Dr. Fuentes, on December 7, 2016, she reported experiencing numbness in the tips of her fingers and feet, along with left-sided weakness, left foot drop, and increased urinary urgency. (Tr. 544). On examination, there was weakness in the left lower extremity, and she was referred to physical therapy. (*Id.*).

On November 29, 2016, Harry saw Mary Cullen-Ott, MA, LLP, for a psychological consultative evaluation at the request of the Social Security Administration. (Tr. 432-37). Harry reported that she felt like her MS was "getting worse," and she tired easily, had blurred vision, decreased memory, problems with balance, minimal ability to walk, and left-sided weakness. (Tr. 432). On mental status examination, she had impaired immediate and recent memory, and her concentration and judgment were limited. (Tr. 435-36). In summary, Ms. Cullen-Ott opined as follows:

> Based on this examination, Ms. Harry would be able to understand and follow simple instructions. It is possible that depression and anxiety would interfere with her ability to concentrate to complete more complex instructions on a sustained basis. Problem solving and judgment are fair. Her ability to manage a normal amount of stress is limited by depression and anxiety. Her ability to effectively interact and communicate with coworkers, authority figures, and the public is adequate.

(Tr. 436).

On August 9, 2017, Harry established care with neurologist Herman Sullivan, M.D. in Grand Rapids. (Tr. 520-23). Dr. Sullivan noted complaints of increased numbness and loss of balance, as well as increased urinary frequency and urgency. (Tr. 522). Physical examination revealed decreased reflexes, neurogenic bladder, and MS progression, with

9

unsteady gait, and Dr. Sullivan ordered additional MRI testing. (*Id.*). An MRI of the brain performed on August 18, 2017 revealed multifocal lesions comparable with demyelinating disease with increased signal of the left lateral ventricle and white matter in the left frontal horn with cortical irregularity in the right frontal lobe. (Tr. 525). A cervical spine MRI performed the same day revealed heterogenous appearance of the cervical spinal cord and brain stem with characteristics of multifocal demyelinating plaque. (Tr. 526).

On January 22, 2018, after Harry had moved to Oscoda, she began treating with a new primary care provider, PA Nicole Cook. (Tr. 533). PA Cook noted ongoing symptoms from Harry's MS, including insomnia, bowel issues, anxiety, occasional trouble swallowing, and urinary incontinence. (*Id.*). At a follow-up visit on March 9, 2018, PA Cook noted that Harry's depression was worsening; that she had lost 50 pounds in the past year; and that she had insomnia and memory loss, as well as suicidal ideation. (Tr. 531). She was diagnosed with severe major recurrent depression, and PA Cook believed a psychiatric evaluation was necessary. (Tr. 532).

On April 26, 2018, on Dr. Sullivan's orders, Harry underwent additional MRIs of her brain and cervical spine. The MRI of her brain revealed white matter lesions that met the criteria for dissemination as well as plaque. (Tr. 511). The cervical spine MRI revealed a small focal disc extrusion posteriorly at in the midline at C4-C5, with focal effacement of the anterior aspect of the cord and altered signal at various levels of the cervical cord. (Tr. 512). Harry returned to see Dr. Sullivan on May 8, 2018, at which time he noted increased weakness, memory loss, muscle twitching, difficulty walking and with balance, blurred vision, tremors, sleep disturbances, incontinence, and suicidal thoughts. (Tr. 517).

On physical examination, Dr. Sullivan noted decreased patellar and Achilles reflexes and abnormal gait. (*Id.*). He documented progression in Harry's MS and recommended continuing injection therapy, attending physical and occupational therapy near her home, and opined that she was not a candidate for a bone marrow transplant. (*Id.*).

On June 18, 2018, PA Cook provided a medical source statement indicating that Harry's MS affects her ability to concentrate and sustain activity over a prolonged period; that she can perform sustained activity over an eight-hour day without the need to lay down or take unscheduled rest breaks; but that her impairment will cause her to miss 5-6 days of work per month. (Tr. 574).

2. *The ALJ's Evaluation of the Medical Opinion Evidence*

In her motion for summary judgment, Harry argues that the ALJ improperly evaluated the medical opinion evidence of record. (ECF No. 15, PageID.638-46). Particularly, she contends that the ALJ failed to give valid reasons – supported by substantial evidence – for discounting the opinion of her treating provider, PA Cook.[2]

As set forth above, Harry's treating provider, PA Cook, issued a medical source statement on June 18, 2018. (Tr. 574). The ALJ explicitly discussed this opinion, saying:

> Ms. Cook opined the claimant's impairments would affect her ability to concentrate or sustain activity over a prolonged period. She opined the claimant would likely miss five to six days of work per month. However, Ms. Cook also indicated the claimant would be able to perform sustained activity at a sedentary exertional level over an

---

[2] Harry also argues that the ALJ did not fully account for the opinion of the consultative psychological examiner, Mary Cullen-Ott, and that the ALJ should not have relied on the opinion of reviewing psychologist Barbara Jones-Smith. (ECF No. 15, PageID.644-46). Because the Court finds that the ALJ erred in giving "no weight" to the opinion of PA Cook, and thus that remand is required on that basis, it need not address the merits of these arguments in detail.

11

> eight-hour workday without the need to lay down or take several unscheduled rest breaks. She stated the claimant's prognosis was stable. Ms. Cook did not provide any support for her opinion or even give a diagnosis on the form. She did not explain the basis for her opinion or resolve the internal conflict within it. I give no weight to this opinion.

(Tr. 21). For the reasons set forth below, the Court finds merit to Harry's argument that PA Cook's opinion was given short shrift and that the decision to give it "no weight" is not supported by substantial evidence.

Because, for purposes of the instant disability claim, PA Cook is not an acceptable medical source,[3] "her opinion 'is not entitled to any particular weight or deference – the ALJ has the discretion to assign it any weight he feels appropriate based on the evidence of record.'" (ECF No. 16, PageID.658 (quoting *Noto v. Comm'r of Soc. Sec.*, 632 F. App'x 243, 248-49 (6th Cir. 2015)). However, the *Noto* case cited by the Commissioner still makes clear that the ALJ cannot simply ignore that evidence, and should evenly consider it, particularly where indicia of reliability and relevance exist:

> Social Security Ruling [("SSR")] 06-03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source. SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006). This ruling recognizes that in some cases a non-acceptable medical source may have an insight as to the claimant's impairment that outweighs even a treating source's opinion depending on the nature of her treatment relationship with the claimant and the quality and supportability of her opinion. *Id.* at *5. Thus, "[o]pinions from these medical sources ... are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Id.* at *3. Moreover, "the case record

---

[3] Effective March 27, 2017, 20 C.F.R. § 404.1502 was amended to provide that licensed physician's assistants, such as PA Cook, are acceptable medical sources. However, this amendment only applies to claims filed on or after that date, so it does not apply to Harry's DIB and SSI claims.

12

> should reflect the consideration of opinions from medical sources who are not 'acceptable medical sources' and from 'non-medical sources' who have seen the claimant in their professional capacity." *Id.* at *6. Finally, "the adjudicator generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that discussion of the evidence in the determination or decision allows a claimant and subsequent reviewer to follow the adjudicator's reasoning[.]" *Id.*

*Noto*, 632 F. App'x at 249.

Here, the Commissioner concisely summarized the reasons for the ALJ's rejection of PA Cook's opinion, noting that the ALJ gave no weight to this opinion because:

- "Ms. Cook did not provide any support for her opinion or even give a diagnosis on the form";
- "She did not explain the basis for her opinion"; and
- "[She did not] resolve the internal conflict within [her opinion]."

(ECF No. 16, PageID.658 (quoting Tr. 21)). Taking each of these reasons in turn, however, the Court is not persuaded that the ALJ's analyses satisfy the standards discussed in *Noto*.

First, while the ALJ faults PA Cook for not including a diagnosis on the form in question, it defies logic to conclude that the restrictions Cook imposed were not based on Harry's MS diagnosis. This diagnosis was noted frequently in PA Cook's treatment records (*e.g.,* Tr. 530, 534, 542), and there are repeated references to this diagnosis from other medical sources of record (*e.g.,* Tr. 76, 79, 544-46, 551, 553, 556, 561-62, 564-73). Indeed, even the ALJ recognized that MS is Harry's only severe physical impairment. (Tr. 14). Given the wealth of record evidence that makes clear Cook was intimately familiar with Harry's MS diagnosis when she issued her restriction in this case, it makes little sense

13

to flatly reject PA Cook's opinion – as the ALJ did here – simply because she did not specify a diagnosis on the form in question.

Second, the ALJ's decision to reject PA Cook's opinion because she did not explain its basis is equally problematic. While it certainly would have been preferable for the form itself to have included a section for a narrative explanation and for PA Cook to have provided such an explanation, this particular form lacked such a section, and thus Cook did not provide one; rather, PA Cook simply answered the questions she was asked. (Tr. 574). Moreover, PA Cook's treatment notes contain facts that explain the basis of her opinion, including Harry's ongoing fatigue and weakness. (*E.g.,* Tr. 530 (describing issues with fatigue); 532 (reporting feeling fatigued)). PA Cook's restrictions are further supported by other medical sources, who repeatedly documented Harry's ongoing and worsening fatigue. (*E.g.,* Tr. 76 (suffers from fatigue); 80 (moderately limited in completing a normal workday without an unreasonable number and length of rest periods); 109 (suffers from "[g]eneralized fatigue"); 309 (reporting falling on two occasions when fatigued); 320 ("[b]attles with fatigue as part of MS"); 373 ("Patient has been falling [sic] fatigue all the time"); 432 (reporting tiring easily to consultative examiner)). And, the many MRIs of Harry's brain, cervical spine, and thoracic spine document objective findings that support Harry's complaints in these respects and PA Cook's corresponding restrictions. (Tr. 333, 337-38, 401-03, 405, 426, 525-26, 511-12). The ALJ's analysis also ignores Harry's testimony that she was terminated from her last employment "because [she] was missing too many days of work for going to doctor's appointments" related to her worsening condition. (Tr. 44). And, it ignores Harry's testimony that there would be times that she

would hardly leave her home. (Tr. 56). Thus, although failing to include an explanation on an evaluation form may generally constitute a legitimate basis for discounting a medical provider's opinion, in this particular case, the ALJ's decision to flatly reject PA Cook's opinion for that reason is at odds with the *Noto* standards discussed above.

Finally, the Commissioner argues that the ALJ properly discounted PA Cook's opinion as internally inconsistent. (ECF No. 16, PageID.661-63). But the Court sees no such inconsistency. As Harry points out, and as her medical providers have recognized, MS is marked by recurrent acute flare-ups (relapses), followed by periods of partial or complete recovery (remission).[4] It is reasonable to assume that PA Cook was opining that, while in remission, Harry would be able to perform sedentary employment for 8 hours on any particular day, but that Harry could be expected to be absent from work 5-6 days per month due to one or more MS flare-ups or relapses. Indeed, given the juxtaposition of PA Cook's two findings – one on top of the other – it is simply not reasonable to assume PA Cook contradicted herself in the manner assumed by the ALJ. To that end, the Court notes that the question about Harry's ability to "perform sustained activity" asks only about work she could do "over an 8 hour work day," whereas the question about Harry's anticipated absenteeism asks for a monthly figure. Thus, the third reason the ALJ articulated for rejecting PA Cook's opinion is also without merit.[5]

---

[4] *See* https://www.webmd.com/multiple-sclerosis/ms-flare-ups (last accessed December 20, 2020).

[5] The Commissioner also argues that – all else aside – PA Cook's "unexplained, speculative opinion about absenteeism cannot be the basis for a remand under the law." (ECF No. 16, PageID.661) (citing *Sharp v. Barnhart*, 152 F. App'x 503, 508 (6th Cir. 2005)). In *Sharp*, however, the Court explicitly held that a physician *could* opine as to a claimant's rate of

The foregoing makes clear that the ALJ's decision to reject the opinion of PA Cook is simply not supported by substantial evidence and is not the product of an even and thorough weighing of the competing evidence in the record. *See Trudell ex rel. Bushong v. Apfel*, 130 F. Supp. 2d 891, 895 (E.D. Mich. 2001) ("'Substantiality of the evidence must be based upon the record taken as a whole. Substantial evidence is not simply some evidence, or even a great deal of evidence. Rather, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight.'") (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). As such, remand is warranted. It also appears that the record in this case would benefit from a physical consultative examination. This is particularly so given the documented "significant" and "extensive" progression of the objective medical findings related to Harry's MS. (Tr. 18; *see supra* at 8-9, 11). At a minimum, the ALJ should expressly consider whether such an examination is warranted, and if so, order that one be conducted and made a part of the record in this case.

## III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that the Commissioner's Motion for Summary Judgment **(ECF No. 16)** be **DENIED**, Harry's Motion for Summary Judgment **(ECF No. 15)** be **GRANTED IN PART** to the extent it seeks remand and **DENIED IN PART** to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. § 405(g), this case be **REMANDED** for further proceedings consistent with this Report and Recommendation.

---

absenteeism and this was not, as the ALJ held, an issue reserved to the Commissioner. *Id.* at 509. Thus, the Court is not persuaded by this argument.

Dated: December 21, 2020           s/David R. Grand
Ann Arbor, Michigan               DAVID R. GRAND
                                                 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 21, 2020.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager
